Good morning, Your Honors. The appellant is asking this Court to conclude that the Board was incorrect in summarily rejecting Robertson & Penn's mutual mistake argument because of an incorrect and incomplete interpretation of the central clause at issue in this case, FAR 52.229-3, the Federal, State, and Local Taxes Clause. The Board essentially interpreted that clause to mean that the appellant assumed the risk of all taxes as opposed to the wording of the clause, which is all applicable taxes. Now the Board correctly stated and quoted the clause on page 3 of its decision, but it has three parts. The contract price includes all applicable clauses, which are defined as, it means all tax and duties in effect on the contract date. The Board ended its examination at that point because the Tennessee Sales and Use Tax had been in existence since 1947, that ended as far as the Board was concerned. However, the clause goes further, that the task and authority is imposing and collecting, is, not could be, not may be, is. Contractors are not required to be clairvoyant. There is really no dispute in this case that at no time prior to 2001 had the state of Tennessee been imposing its sales and use tax on the federal enclave of Fort Campbell, Kentucky. We get that from the Declaration of the Appellant's President, Mr. Harold Robertson, Joint Appendix 45. And in Joint Appendix 61, the work papers of the state of Tennessee auditor said the state tax had never been paid on the issued equipment, regardless of what contractor was using it. The third element of the clause is... What about Kentucky? Were you ever assessed taxes by Kentucky? Your Honor, I'm not sure, I don't know. The government's independent government estimate regarding what was a fair and reasonable price for this did not indicate any sales and use tax for the state of Tennessee. The third element in the clause is on the transactions or property covered by this contract. The transactions or property covered by this contract. Now the government on page 22 of their brief recognized that this is a problem, so they want to add two words in there. Type of, kind of. They're basically making the argument that the state of Tennessee imposed a tax on a laundry in downtown Nashville, and therefore this was an applicable tax here. Not so. Those words are not in there. In our brief we cite the BNY case from the board. The board in that case cited the decision of the United States Court of Claims, Morris and Knutson, in 1970, dealing with the predecessor of this clause. The self-evident purpose of the contract clause, its general goal, is to make sure that bidders and contractors do not load their bids and prices with reserves or contingencies for the later imposition of or increases in such taxes. The court continued, it would deter rather than advance the overall aim of guarding against the unnecessary inflation of contingency reserves to give a niggardly, technical, or too finely reasoned interpretation to the words transactions or property covered by this contract. Then the court later went on to castigate the refined linguistic parsing that the defendant uses here. So with that incomplete analysis of the contract clause, which is in this contract, the board concluded therefore that the appellant could not meet the fourth element of the Dairyland Power Cooperative case, and concluded that the appellant had assumed the risk of all state taxes. We disagree entirely with that. Contractors are not required to be clairvoyant. This tax had never been imposed before, from 1947 until 2001. Now the board said, well, the appellant did not engage in due diligence, rolls off the tongue, due diligence, or sufficient investigation, the board also referred. The board seemed to be relying on backwards logic. Because the tax was imposed in 2001, therefore, there was not a sufficient investigation by the appellant in 1997. How do you investigate a negative? What did the appellant miss in 1997? It had never been imposed before, it would not be imposed until 2001, there was no new statute, no new regulation, no new proposed policy letter, that should have put the appellant on notice that a tax was becoming an applicable tax. How do you get around the Federal Circuit's opinion in 2002 Hunt Construction v. U.S., which had similar facts to this case, and plainly instructed that the bidder to the contract bear the burden, under the same provision we're talking about now? Remember, in Hunt Construction, Your Honor, besides the clause, there was a special notice. In fact, the court even recognized that it was even on green paper to put bidders on notice. You know, there's a tax here, there's a state tax that you really should be looking at. There is no such special notice in the case at Bar. But even if there had been such a piece of green paper with that notification on it, I take it from what you were just saying, that your position would have been, well, yeah, we looked at it, but it's never been imposed before, no likelihood that it will be imposed again, and therefore, you would still be arguing a mutual mistake, would you not? Yes, Your Honor, I would, because the word is is. It is not maybe, could be. Well, then why does the green paper distinction of Hunt help you? Oh, because in that case, there was no, in Hunt, if you recall, the issue was, there clearly is an applicable tax. The green notice said, you know, we may consider giving you an exemption if you apply for it as part of your bid. That is not at all present in the case at Bar. So there, there was no issue of applicability. It was clearly applicable. But applicable is normally not the same as has been applied. I mean, you've got a case in which, I don't think there's any dispute, at least not to us, that the tax was applicable in the sense it could legally be applied. It simply hadn't been applied, correct? No, Your Honor, if I understood your question, I disagree. It was not applicable. Why? Because it failed to meet the second and third test of the clause. In the words of the clause, that the taxing authority is imposing and collecting on the taxing authority. Well, no, no, I'm focusing on the applicable. Okay. You said, well, this wasn't applicable. Well, that's not right, right? It was applicable because they applied it to you, and you're not suggesting that they didn't have the legal authority to do so, correct? Clearly, the taxing authority did have that authority. Right, so it was applicable. As far as the taxing authority, absolutely. And as far as you, you have to pay the tax. Yes, Your Honor, but under the terms of this clause, at the time, it did not fit the definition. I think I'd give up on applicable and go to the other clauses. Okay, Your Honor. Do you want to walk away from applicable, or do you want to hold on to it? Well, Your Honor, if you've still got two minutes and eight seconds, I'll give it another shot. All right, good. It's a lifeline, right? You can use it. Well, that's true, that's true. We take the contracts as they are written, and there are plenty of times I wish I could have rewritten the contract. Every contract case we have, by definition, that's the problem. That's right, Your Honor. And this clause is, I submit, very clear. It puts a three-part test as to what fits the definition. All applicable federal, state, and local clauses, as used in this clause, means all taxes and duties in effect on the applicable date. And it ended at that point that the taxing authority is imposing and collecting on the transactions of property covered by this clause. So I understand the distinction you're making, but that is not the distinction that the clause is making. It's the is that really is the core of your argument. Yes, Your Honor, is, not what could be, what may be. The second item that the board looked at was whether it was an existing fact. We never said that this would never be applied in the future. We're not clairvoyant. What we did say before the board, it had never been applied before, and it is not being collected and imposed on this date. Both parties were mutually mistaken on the date of award, September 18, 1997, as to whether the tax was being imposed and collected. It was not. In conclusion, Your Honor, let me just point out, the decision of the board was a windfall for the government. It allowed the government to avoid a tax that would clearly be an allowable tax. In 2003, after this case had arisen, the government changed the wording of the clause to put people on notice. You know, make sure you include this in there. The government, in its brief on page 22, argues that the very fact that FAR 52.229-3 was in the contract, that should have alloyed others. But is the government responsible for the interpretation of that FAR provision, which is incorporated in the contract? Is that up to the contracting party to determine whether or not it is applicable? It is up to both parties to determine that, Your Honor. The government wrote the clause. We did not write the clause. It was the government that chose the word is, not could be, not maybe. So we think the government has to live by the words they chose. Have I answered your question, Your Honor? Well, what concerns me is that the clause is incorporated into every contract under the FAR provisions. Correct, Your Honor. And I think most people who deal with the government would have an understanding of what that clause is, and whether or not taxes are passed through to the government or otherwise. At that point in time, you put your bid accordingly. Yes, Your Honor. Now, as far as I could tell from the record, you have put on notice that you were very low bidder. Yes, Your Honor. For some reason, other people may have read that clause differently. There is no indication of the latter part of your question, Your Honor. In fact, at Joint Appendix 91 and 92, we submitted affidavits from two other competitors. They had not done it either. We point out, regarding the low bid, we were the incumbent, so it is not like we did not know how much it cost to perform this contract, nor is there any indication that we had any trouble performing in 1997, 1998, 1999, 2000. It was only in 2001 when, out of the blue, we got that letter from the state of Tennessee that we realized there was a problem here. And again, the independent government estimate, which is very detailed, and is at Joint Appendix 81, 85, is also very clear. They did not have it in there either. So neither party believed that the tax was applicable. I recognize that, and we will give you some additional rebuttal time, so I will question you heavily. But I realize that the law of mutual mistake is a murky area, but I would like you to help me with understanding its application in a particular subset of cases that would include this case, and that is contracts by a service provider to a customer who wants to take advantage of the offered service. I mean, I go to a dry cleaner, just to make it really simple, and I contract with the dry cleaner to clean my suit for X amount of money. Now, the dry cleaner could not possibly come back and say, you know what, the state just visited us the other day, and even though they had never previously applied sales taxes to dry cleaners, they're doing it now. I'm going to have to increase the cost of cleaning your suit by a dollar. I mean, I don't really care about taxes or anything else. I just want to know how much it's going to cost me to get my suit cleaned, right? Does mutual mistake have a role to play in that kind of transaction? No, Your Honor, I believe it would not, because the transaction you indicate did not have the clause that we have present in the case at bar. In your scenario, basically, that was a clear, unadulterated, firm fixed price contract. Now, if the state came in the day after and had said, oh, by the way, we're going to drop your taxes, dry cleaner. Then the dry cleaner bent. That's right, that's right. But the clause we have here that the government wrote and put in its contract was not present in the situation that you posit. So, Your Honor, in conclusion, this was a windfall for the government, and this honorable court always has to worry about precedent. Are you opening the floodgates? This is a sui generis case. This is a military installation that straddles Tennessee and Kentucky. The imposition of the state tax on Tennessee caught my client totally unawares, and I submit reasonably so. So I wouldn't worry about opening the floodgates if you give my client his day in court. Thank you, Your Honor. Thank you. Mr. Kiffner. May it please the court. This court should affirm the decision of the Armed Services Board of Contract Appeals because there are no genuine issues of material fact, and the government has entitled the judgment as a matter of law with respect to both the mutual mistake and misrepresentation claims asserted by RPI on appeal. With respect to the mutual mistake claim, which formed, I believe, the entirety of RPI's argument, RPI cannot establish that it did not bear the risk of its mistake pursuant to the inclusion of the FAR clause at issue in this case. Well, what about the is language that Mr. Nagel relies on? Well, as we note in our brief, first, the tax was applicable because Well, yeah, he was focusing in on the is as that it really, what's the precise language? Is imposing and collecting. He said it wasn't imposing and collecting that tax, and therefore, that clause takes him out of the applicable language. Well, it is true that in 1997, Tennessee was not issuing an assessment to RPI to pay this tax. But, of course, the important point is that the Department of Revenue of Tennessee was, in fact, imposing this tax on other laundry facilities in the state of Tennessee. That is, the activities of the laundry facility were the type of property and services that came within the scope of the sales and use tax. Well, he objects to your addition of the words type of to the language of the FAR. I understand that. I think it's the only reasonable basis, the only reasonable way to read the clause. What RPI is doing is really making an overly technical reading of the FAR clause. As we note in our brief, RPI's reading would mean that if the laundry facility had first opened in 1997, there would be no evidence that Tennessee was imposing the sales and use tax at that time, of course, because there was no facility prior to the initiation of the contract. And thus, the tax would not be applicable under that scenario. That simply cannot be right. I mean, that simply is, it would lead to essentially absurd results. The tax could never apply in a situation in which a facility is first opening. And that's really why we believe that their overly technical reading is incorrect. So how would you construe is imposing and collecting? We would construe that as looking to what the state of Tennessee is doing with respect to similarly situated businesses. That is, is Tennessee imposing a sales and use tax or a business tax or a franchise tax on other laundry facilities in the state of Tennessee? Suppose that they had never, for some reason, they just overlooked laundries. And the tax administration said, you know what? We've missed a big source of revenue. Let's go after the laundries. And so suddenly they decided as an enforcement policy matter to correct their oversight and go after laundries. Are you suggesting that that would fall, that change of policy would fall within the scope of the clause? That is to say, would give them a basis for establishing mutual mistake? Yes, Your Honor, I am. Because unlike the after-imposed federal tax clause that was incorporated into this contract, it's actually contained in the same FAR provision, subsection C, I believe. After-imposed state and local taxes, even through changes of enforcement policy, are not recoverable. So you would say after-imposed is not just after legislated, but after enforcement decisions that are made. Yes, the after-imposed federal clause, for instance, refers not only to legislative enactment but also administrative action. So how about if they decided, suppose this laundry is a fairly small laundry and they had previously only gone after large laundries and they decided, you know, we really need the money. Let's go after laundries that are below the certain cutoff size that we previously. That also would be after-imposed, right? Yes, it would. We believe so. And you think that the decision to go after laundries on federal basis isn't a similar kind of decision? I'm not sure I understand. Well, in other words, you're saying it's after-imposed if the state decides for the first time to go after laundries. Also after-imposed if they decide to go after small laundries. Why isn't the same rationale that doesn't that hold if they decide for the first time to go after laundries that are located on federal basis, military basis or other federal reservations? I guess the best way I can answer that is that there is no doubt under the Tennessee Code that contractors operating on federal property are subject to the same taxes. Sure. But I'm talking about a question of enforcement. You had said that enforcement decisions made with respect to laundries or small laundries or some other category of laundries would constitute an after-imposed tax. So I'm having a hard time distinguishing between the small laundries and the laundries on military basis, which previously they hadn't gone after but now they're going to go after because they say, you know what, we can get those guys. I guess even assuming that it was an after-imposed tax, that there was a change in enforcement policy with respect to laundry facilities located on military basis, for instance, that would still be an after-imposed state tax that would not fall within or that would not come within the after-imposed federal tax exemption of this FAR clause. It would still be a tax that the contractor must bear. But if it were, but after-imposed as in after-legislated state taxes are not imposed on the contractor, right? Actually, Your Honor, in this particular contract, under this FAR clause, after-imposed state taxes are not recoverable. There is another FAR clause, I believe it's 52229-4, which does allow for after-imposed state taxes, but that involves non-competitive contracts. So in this particular case, any real state administrative or enforcement policy change, the risk of that change falls on the contractor. No matter when imposed? Yes, yes. And as Judge St. Eve noted, this court in Hunt stated that the FAR clause plainly instructs bidders to include applicable state taxes in its bid. Now, RPI argues that it's not required to be clairvoyant, and to a certain extent that's of course true, but that's different than saying that it didn't bear the risk of Tennessee's changing enforcement policy. Or legislation. Or legislation. I mean, really any change in the tax law, any risk of change in tax law would be borne by RPI under the terms of this contract. So I misunderstood then your earlier argument. Are you saying that even if a new tax was legislated after the contract, that they would bear the risk? Yes, I believe under the language of this contract they would. Through the FAR? Through this FAR clause, yes, they would. And the absence of the applicability of the after-enacted or after-implemented, whatever the language is, provision to anything other than federal taxes with respect to this category of contracts is what I think you answered. Yes. All right, just to be sure, because it gets kind of technical here. Right. With respect to the misrepresentation claim that RPI asserts, they note on page 8 of their reply brief that on this record, there is in fact no evidence supporting that the government made any statement of material fact regarding the application of these taxes. And that dovetails in with the idea that the government did not form any belief under the mutual mistake doctrine. It had no belief regarding the application of these taxes. There is nothing in the record establishing that the government held the belief one way or the other regarding the application of these taxes. You know, I do think that mutual mistake law is difficult to sort out with great precision. But one of the principles that underlies a lot of the cases, as far as I can see, is a sense of whether one side is really getting an unfair windfall-type advantage over another. Now, in this case, if I understand it, the effect of the tax is that it essentially makes the contract totally worthless in the sense of non-profitable for the contract. Is that fair? I believe the bid was for $860,000, and the final tax assessed was $650,000. Oh, okay. Well, it cuts the price. It certainly, obviously, cuts against that. Very, very small. Yes. And is there any indication in the record that the addition of the taxes, which otherwise would have been added to the bid, would have produced a change in the bid award? I don't believe so, Your Honor, because RPI's bid was approximately $600,000 less than the next lowest. Even if it had included the applicable state taxes, those taxes would have amounted to, I believe, less than $600,000 or approximately $600,000. So that being the case, it isn't the case in which the contractor managed to get the contract by ignoring the taxes and now wants to come back at the government for taxes that it couldn't have had the contract if it had included in the first place. I agree that there's nothing in the record establishing that RPI intentionally omitted from its bid the fact that these taxes might be included. Okay. Finally, the RPI's argument regarding the summary judgment standard used by the Board is essentially abandoned in its reply brief. The Board properly articulated their standard and applied that with respect to both the mutual mistake and misrepresentation claims. Is the language that the Army added that taxes should be included in bids in 2003 enough to raise an inference to preclude granting of summary judgment? Is that enough to raise an issue of fact on the mutual mistake? First, I'd argue that regardless of what happened in 2003, unless RPI can establish that it didn't bear the risk of its mistake, it doesn't matter what the government believed. That might be the ultimate issue, but there are two phases here and two issues that are being appealed, the mutual mistake and the risk. On the issue of mutual mistake, is that evidence enough to render the finding inaccurate as a matter of law? Is that enough to raise an issue of fact that makes summary judgment inappropriate? No, it is not, Your Honor, because the incorporation of that language in the 2003 agreement says nothing about RPI's tax liability. Just as the FAR clause doesn't impose liability or dictate RPI's liability for the state tax, the inclusion of that language in the 2003 agreement says nothing about whether RPI is actually required to pay the tax. It simply requires RPI to make certain compilations regarding that tax when issuing its price list. But does it suggest or raise an inference that the Army in 1997 thought that no state taxes were applicable? I think that's the issue rather than who bears the risk. Well, it arguably does, although, I mean, there's one or two... And would that preclude summary judgment? It wouldn't with respect to mutual mistake, because mutual mistake requires both a mistake and RPI to assert and establish that it didn't bear the risk. So regardless of what the government believed, and to be clear, the inclusion of that 2003 language could just as easily mean that the Army had no belief whatsoever about the application of these taxes. It could, but again, we're talking about inferences and raising facts and viewing the evidence as the light most favorable to RPI. Well, again, but as the Court noted in Liberty Lobby, the non-movement who bears the burden of trial is required to come forward with some evidence establishing a genuine issue. There has to be some evidence... And that's my question. Is the 2003 inclusion the some evidence that would raise an issue of fact? We do not believe it is, no. For these reasons, we would respectfully request that this Court affirm the decision of the Board, and if there are no further questions, thank you. Thank you, Mr. Kiffmeyer. Mr. Nagel. To address your question, Your Honor, the imposition of $600,000 did not just reduce the profit. It wiped it out. This made this a lost contract. The entire contract price was $800 and some odd thousand dollars. Oh, was that the entire contract price? Yes. Oh, I'm sorry. Yes. What was the difference in your bid and the next lowest bid then? I had my numbers confused then. The price was, as I recall, $845,000, something like that, and the next low was over a million. So the imposition of this tax made this a lost contract. All right. Well, go ahead. To go back to Judge St. Eve's question, if the government was not mistaken about the imposition of the tax, that the 1997 contract was already clear enough, there would have been no need to add that language into 2003. So we believe that in and of itself, and we list that, I think, on pages 30 to 31 of our brief as items that deserve a factual hearing and trial. Had this issue surfaced by then? I mean, had somebody raised the point? The issue had surfaced in 2001. However, it was not resolved with the State until 2006. All right. But isn't it the reasonable thing for a drafter to do is to put in language that would make sure that the issue didn't continue to bubble up? I mean, putting in a crossing guard at the place where an accident occurs doesn't necessarily mean that you're acknowledging liability, right? That's correct, Your Honor. However, if you're going to apply the reasonable standard to the government in 2003, I would also like you to impose the reasonable standard to my client in 1997, where they basically say, unlike the position argued by government counsel, this was not a new laundry. This was a laundry that had been in existence for decades, and they had never before imposed a state of Tennessee tax on the Fort Campbell, Kentucky library. There are limits to the risk you can impose on a contractor, especially in light of this clause. My client didn't write that clause. The government wrote that clause. They chose the word is, and they chose not to use the words kind of or type of. My client deserves his day in trial. What is the difference, and this is something that's always been sort of a puzzle to me, because I've never actually practiced before the Armed Services Board of Contract Appeals, but what is the practical difference between a summary judgment, which I understand before the ASPCA, there's a lot of paper that goes into a summary judgment proceeding, versus a trial proceeding in a case which is essentially a paper case? Your Honor, it's a difficult question to ask briefly, to answer briefly. Let me ask it this way. What would you get, other than a second shot, but what would you get from sending it back for a trial before the ASPCA that you didn't get and were somehow foreclosed from having an opportunity to present at the summary judgment? As a trial lawyer, my off-the-top-of-the-head answer is a better chance for settlement. Government, do you really want to go to trial and litigate this issue and possibly lose and have a bad precedent that may hang around your neck for a while, or you may just want to settle this? I think that would be the main thing as a trial lawyer I would be interested in. Thank you very much for your kindness. Wouldn't you also get credibility determination? Yes. Yes, Your Honor. And the court would be able to weigh the evidence in a way that the court can't at the summary judgment stage? Yes, Your Honor. I would put Mr. Robertson on the stand. So you would have live testimony? Yes, Your Honor. That's sort of what I was wishing for. Oh, I'm sorry, Your Honor. No, that's fine. Thank you. Thank you. Let me thank both counsel.